IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

DEON C. STAFFORD, SR.,

    Plaintiff,

    v.

DOMINICK DEROSE, et al.,

    Defendants.

CIVIL NO. 3:CV-09-346

(Judge Conaboy)

FILED
SCRANTON

MAR 0 8 2013

PER _____
DEPUTY CLERK

**MEMORANDUM**
**Background**

Deon C. Stafford, Sr., an inmate presently confined at the State Correctional Institution, Dallas, Pennsylvania (SCI-Dallas) filed this pro se civil rights action pursuant to 42 U.S.C. § 1983. Remaining Defendants are employed at Stafford's prior place of confinement, the Dauphin County Prison, Harrisburg, Pennsylvania.

This matter was originally assigned to Judge Thomas Vanaskie, during his prior tenure with this Court. On October 28, 2009, Plaintiff's request to voluntarily dismiss his claims against Defendant Wayne Lutz was granted by Judge Vanaskie. See Doc. 28.

By Order dated March 26, 2010, Judge Vanaskie dismissed Plaintiff's: (1) requests for injunctive relief on the basis of mootness; (2) due process claims regarding alleged intentional taking of Stafford's personal property;[1] (3) attempts to establish liability against Defendants DeRose and

---

[1] However, said claims were allowed to proceed to the extent they asserted a denial of access to the courts.

1

Carroll based upon the substance of, or their lack of response to his institutional grievances; (4) allegations of verbal harassment and threats; (5) procedural due process claim of being denied witnesses during his institutional misconduct hearing; and (6) claims that Defendants interfered with his right to exercise his religious beliefs. See Doc. 36, p. 24.

Stafford's action was reassigned to the undersigned on June 7, 2010. By Memorandum and Order dated September 23, 2011, this Court granted a motion for summary judgment filed by Defendant Tom Toolan, Medical Supervisor at the Dauphin County Prison. See Doc. 98.

A September 30, 2011 Memorandum and Order issued by this Court partially granted a summary judgment motion filed by Remaining Defendants Warden Dominick DeRose; Deputy Warden Leonard Carroll; and Correctional Officers (CO) Tuttle, Fred Wright, Shellenhamer, Weikel, Lucas, Kezel, Ronald Fuller Shawn Clews, Henson, and Taylor. See Doc. 99.

Specifically, summary judgment was granted in favor of Defendants DeRose and Carroll with respect to any claims solely premised upon their respective supervisory capacities as well as any allegations relating either to the issuance of a misconduct charge by Officer Wright or the alleged use of excessive force by Officers Lucas and Tuttle. Summary judgment was also granted in regards to all claims by Plaintiff regarding his placement in pre-hearing

2

administrative custody.

However, the summary judgment motion was denied with respect to the claims that: (1) Defendants Lucas and Tuttle subjected Plaintiff to an excessive use of force; (2) the conditions of Plaintiff's confinement were unconstitutional; (3) Defendant Wright issued Stafford a retaliatory baseless misconduct charge and (4) denial of access to the courts.

By Order dated April 30, 2012, the parties were granted leave to file additional summary judgment motions regarding Plaintiff's conditions of confinement claim.[2] See Doc. 110.

Presently pending is Remaining Defendants' motion for partial summary judgment. See Doc. 112. The opposed motion is ripe for consideration.

**Discussion**

Remaining Defendants claim entitlement to entry of summary judgment with respect to Plaintiff's surviving conditions of confinement claims because the undisputed facts show that "the alleged deficiencies, when taken in isolation or in combination, do not deprive a single, identifiable human need of Plaintiff." Doc. 114, p. 1.

**Standard of Review**

Summary judgment is proper if "the pleadings, the

---

[2] The claims that: (1) Defendants Lucas and Tuttle subjected Plaintiff to an excessive use of force; (2) Defendant Wright issued Stafford a retaliatory baseless misconduct charge and (3) denial of access to the courts are not the subject of the pending dispositive motion and will be proceeding to trial.

3

discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); See also Saldana v. Kmart Corp., 260 F.3d 228, 231-32 (3d Cir. 2001). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. Id. at 248. The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. Saldana, 260 F.3d at 232; see also Reeder v. Sybron Transition Corp., 142 F.R.D. 607, 609 (M.D. Pa. 1992). Unsubstantiated arguments made in briefs are not considered evidence of asserted facts. Versarge v. Township of Clinton, 984 F.2d 1359, 1370 (3d Cir. 1993).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for

4

trial." Id. (internal quotations omitted); see also Saldana, 260 F.3d at 232 (citations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." Celotex, 477 U.S. at 322-23. "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'" Saldana, 260 F.3d at 232 (quoting Williams v. Borough of West Chester, 891 F.2d 458, 460-61 (3d Cir. 1989)).

It is also undisputed that Plaintiff was a pre-trial detainee during the relevant time period, as such his claims must be considered under the due process clause of the Fourteenth Amendment as opposed to the Eighth Amendment, which is the applicable standard for incarcerated persons. Hubbard v. Taylor, 399 F.3d 150, 158 (3d Cir. 2005). However, the Third Circuit Court of Appeals has observed that claims by pre-trial detainees have parameters that are coextensive with those of the Eighth Amendment's prohibition against cruel and unusual punishment. Keller v. County of Bucks, 2006 WL 3779749 *3 (3d Cir. Dec. 22, 2006).

The Eighth Amendment's prohibition of cruel and unusual punishment imposes duties on prison officials to provide prisoners with the basic necessities of life, such as food,

5

clothing, shelter, sanitation, medical care and personal safety. See Farmer v. Brennan, 511 U.S. 825, 832 (1994); Helling v. McKinney, 509 U.S. 25, 31 (1993). Prison conditions may amount to cruel and unusual punishment if they cause "unquestioned and serious deprivations of basic human needs ... [that] deprive inmates of the minimal civilized measure of life's necessities." Tillman v. Lebanon County Correctional Facility, 221 F.3d 410 (3d Cir. 2000).

In reviewing conditions of confinement claims, courts have stressed that the duration of the complainant's exposure to the alleged unconstitutional conditions and the "totality of the circumstances" are critical to a finding of cruel and inhumane treatment. Moreover, the focus must be on the deprivation of a particular basic necessity. As explained in Wilson v. Seiter, 501 U.S. 294, 304-05 (1991):

> Some conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise – for example, a low cell temperature at night combined with a failure to issue blankets. To say that some prison conditions may interact in this fashion is a far cry from saying that all prison conditions are a seamless web for Eighth Amendment purposes. Nothing so amorphous as 'overall conditions' can rise to the level of cruel and usual punishment when no specific deprivation of a single human need exists.

Upon making a showing of conditions that pose a risk of

6

serious harm, the inmate must establish that the prison official responsible for the conditions of confinement acted with "a sufficiently culpable state of mind." Id. at 298. A prison official violates the Eighth Amendment when he acts with deliberate indifference to a known objectively serious risk to a prisoner's health or safety. See Farmer, 511 U.S. at 837; Beers-Capitol v. Whetzel, 256 F. 3d 120, 125 (3d Cir. 2001). This requirement of actual knowledge means that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

Plaintiff alleges that the Dauphin County Prison was overcrowded to the extent that the inmate population "lived in fear everyday of being assaulted or bullied." Doc. 82, p. 9. Stafford elaborates that twenty-six (26) prisoners had to share a single bathroom and due to the overcrowding and there were six (6) assaults and a riot during the month of December, 2008. See Doc. 1, p. 4.

The Complaint further alleges that Stafford was denied adequate visitation,[3] recreation, and shower privileges.

---

[3] Neither convicted prisoners nor their family members have an inherent constitutional right to visitation. See Thorne v. Jones, 765 F.2d 1270 (5th Cir. 1985); Flanagan v. Shively, 783 F. Supp. 922, 934 (M.D. Pa.), aff'd, 980 F.2d 722 (3d Cir. 1992), cert. denied, 114 S. Ct. 95 (1993); Doe v. Sparks, 733 F. Supp. 227, 230 & n.3 (W.D. Pa. 1990).

7

Plaintiff also contends that due to a failure of prison officials to adequately clean the prison's showering facilities there was a MRSA outbreak. The Complaint additionally maintains that meals were served in an unsanitary manner[4], and that lights were sometimes left on 24 hours a day.

**Overcrowding**

Remaining Defendants acknowledge that Plaintiff arrived at the Dauphin County Prison on October 26, 2008 as a pre-trial detainee.[5] According to a sworn affidavit by Warden DeRose, in December 2008, Stafford was housed in the Q-5 cell block which consisted of eight cells[6], two showers, and a dayroom which could accommodate bunk beds. See Doc. 114-2, Exhibit A, ¶ ¶ 5-10.

The Warden concedes that during that time period approximately twenty-five (25) prisoners occupied Q-5. On average, fourteen (14) prisoners were housed in seven (7) cells. While eleven (11) inmates slept on bunk beds in the dayroom. See id. at ¶ 11. One cell was kept empty to allow

---

[4] Specifically, Plaintiff states that food service workers did not use gloves or wear hairnets when serving food. See Doc. 1, p. 4.

[5] The Plaintiff was transferred from the Dauphin County Prison on March 9, 2009. See Doc. 9. Accordingly, the duration of his stay at the Dauphin County Prison lasted approximately four (4) months.

[6] Each cell could house two inmates and was equipped with a sink and toilet.

8

the dayroom prisoners access to a toilet and sink. All Q-5 prisoners shared the two (2) showers in the cell block.

Defendant DeRose also points out that the standards of the American Correctional Accreditation (ACA) standards required one shower, one sink, and one toilet per each fifteen (15) inmates.[7]

It is undisputed that on December 28, 2008 prisoners housed in Q-2 barricaded themselves in that cell block and engaged in destructive behavior. DeRose notes that Stafford was not housed in Q-2 at the time of the disturbance but rather in Q-5.[8] See id. at ¶ 29.

According to DeRose, during December 2008, there were five (5) reported inmate on inmate assaults and one (1) reported inmate on guard assault. Only one of the reported assaults (inmate on inmate) occurred on the Q block. Based upon the information provided by Warden DeRose's affidavit, Remaining Defendants conclude that Q-5 was not overcrowded during the time of Plaintiff's incarceration. See Doc. 114, pp. 16-17.

---

[7] It appears that DeRose maybe be referencing standards developed by the American Correctional Association which "is a private, not-for-profit corporation" which "offers a voluntary certification program to federal, state, and local correctional facilities." Bisby v. Garcia, 2008 WL 2787251 *2 (S.D. Tex. 2008); Estate of Williams v. American Correctional Ass'n, 2008 WL 244322 *1 (S.D. Miss. 2008).

[8] Clearly the fact that a disturbance broke out in a neighboring cell block does not form a basis for a claim that Plaintiff was subjected to any constitutional deprivations.

9

It is undisputed that Plaintiff was confined at the Dauphin County Prison from October 26, 2008 to March 9, 2009. He was a pre-trial detainee. From January 6, 2009 to January 23, 2009, Stafford states that he was held in the prison's Restricted Housing Unit.[9] This action was filed on February 24, 2009.

Stafford was one of eleven (11) prisoners who slept on bunk beds in a dayroom. Those eleven inmates shared a single toilet and sink. They also jointly used two showers along with the approximately fourteen other prisoners residing in the cellblock.

In Hubbard v. Taylor, 399 F.3d 150 (3d Cir. 2005) the Third Circuit Court of Appeals addressed an overcrowding claim by a pretrial detainee. Unlike the present matter, Hubbard regarded triple celling with one prisoner sleeping on a mattress on the floor. The Court of Appeals stated when addressing the issue of overcrowding of pre-trial detainees the threshold issue is whether the conditions amounted to pre-conviction punishment.

More recently, the Court of Appeals has stated that the critical issue "is not the number of prisoners who share facilities, it is whether the alleged overcrowding has somehow harmed the prisoner." Lindsey v. Shaffer, 411 Fed Appx. 466

---

[9] DeRose states that from October 26-30, 2008, November 23, 2008 and from January 23-29, 2009 Plaintiff was confined in the prison's Classification Block.

10

(3d Cir. Feb. 11, 2011). In Lindsey the prisoner plaintiff sought relief on the grounds that he was forced to sleep on a mattress on the floor of his cell and had to share a toilet with the other inmates in his housing unit for a six to seven week period. The Court of Appeals affirmed the dismissal of the case noting that the prisoner had not provided evidence that he had been denied a sanitary living environment.

Clearly, the conditions in Q-5 housing unit, notably the housing of 11 prisoners in a dayroom, resulted in uncomfortable, crowded living conditions. The housing of prisoners in dayrooms also created additional security concerns. Despite those concerns, it is undisputed that Plaintiff only resided in Q-5 for a temporary period. As previously discussed, Stafford's total stay in the Dauphin County Prison lasted only about four (4) months and he was housed in the classification unit for approximately two (2) weeks of that period.

Given the temporary length of the challenged confinement, the standards announced in Lindsey and the failure of Plaintiff to assert that he suffered any harm due to the crowded conditions in Q-5 or as a result of the comnditions in the Classification Block, the totality of the circumstances of the alleged conditions simply do not implicate the level of a serious deprivation of basis human needs required to set forth

an actionable constitutional claim.[10]

**Food Service**

Plaintiff's second remaining contention alleges that inmate meals were served in an unsanitary manner. Specifically, Plaintiff states that food service workers did not use gloves or wear hairnets when serving food. See Doc. 1, p. 4.

Under certain circumstances a substantial deprivation of food can constitute a constitutional violation. However, without evidence that spoiled food was frequently served an inmate plaintiff cannot establish a constitutional violation. Brown v. Sobina, 2009 WL 5173717 *6-7 (W.D. Pa. Dec. 29, 2009).

Warden DeRose's affidavit states that the servers of inmate meals and block officers are not involved in the actual food preparation. Doc. 114-2, ¶ 34. The Warden adds that either a block officer supervises the distribution of meals to the inmates or the prisoners are allowed to obtain their meal trays from the food cart. See id. at ¶ 35. The affidavit adds that ordinarily a prisoner is selected by the block officer to distribute the meals.

In the instant case, there is no claim by Plaintiff that the individuals who prepared inmate meals did so in an

---

[10] The Court nonetheless expresses the hope that prison officials have or will employ all reasonable measures to improve the admittedly crowded conditions which existed in the prison at the time of Inmate Stafford's stay.

12

unsanitary manner. Rather, Stafford's claim is limited to the issue as to whether the persons who delivered the food trays should have been required to war gloves and hairnets. In Blount v. Folino, 2011 WL 2489894 *13 (W.D. Pa. June 21, 2011), the district court concluded "service of food on unsanitary trays does not present an unreasonable risk of harm" as required to set forth a valid constitutional claim.

Likewise the use of eating utensils that were not properly washed does not constitute cruel and unusual punishment. See Blaxton v. Boca Grande Foods, 2008 WL 4888852 * 2 (N.D. Fla. Nov. 12, 2008).

Based upon an application of those standards, especially noting that there is no claim by Stafford that he or any other prisoner in his housing unit actually received a meal that was spoiled or that he was sickened from eating food which was delivered in an unsafe manner, a viable constitutional claim has not been stated.[11]

**MRSA**

Methicillin Resistant Staphylococcus Aureus ("MRSA") is a common bacteria which is resistant to antibiotics and which can cause infections. MRSA infections frequently occur in hospital settings, correctional settings and the community.

The Complaint contends that the failure of prison

---

[11] While it may be more sanitary for food servers to wear hairnets and gloves, this Court would note that waiters and waitresses in restaurants across the country serve meals every day to customers without wearing hairnets or gloves.

13

officials to adequately clean the prison's showering facilities resulted in a MRSA outbreak. Defendants contend that while there were a few, scattered and unrelated MRSA cases as is common in any correctional facility, there was no MRSA outbreak in the housing areas where Plaintiff stayed during his relatively short term confinement in the Dauphin County Prison. See Doc. 114, p. 19.

It is initially noted that the Eighth Amendment does not require that prisoners be afforded frequent or comfortable showers. See Veteto v. Miller, 829 F. Supp. 1486, 1496 (M.D. Pa. 1992)(deprivation of showers during period of placement in administrative detention found not to be Eighth Amendment violation); Briggs v. Heidlebaugh, 1997 WL 318081 *3 (E.D. Pa. 1997)(denial of showers for two weeks is not a constitutional violation; DiFilippo v. Vaughn, 1996 WL 355336 at *5 (E.D. Pa. 1996)(Eighth Amendment does not require that prisoners be afforded frequent or comfortable showers).

Moreover, the presence of black mold in a prison shower has also been determined not to rise to a constitutional violation where the inmate plaintiff has not presented any facts alleging a substantial risk of harm. Nickles v. Taylor, 2010 WL 1949447 * 5 (D.N.J. May 14, 2010).

Warden DeRose confirms that between October-December, 2008 there were ten (10) confirmed MRSA cases at the prison. The average daily population of the prison during that period was 969 inmates. Between January-March, 2009 there were six

14

(6) confirmed prisoner MRSA cases. The average daily population of the prison during that period was 947 inmates.

DeRose futher states that the prison had an established MRSA protocol. The Warden adds that it was the responsibility of the prisoners to clean their showers and that they were provided with cleaning supplies to carry out that task.

There is no claim by Plaintiff that he contracted MRSA. For that matter, there is no allegation that anyone in Plaintiff's housing unit had MRSA or that he was actually even exposed to MRSA. Second, based upon the undisputed statistical information provided by Warden DeRose, this Court cannot agree that there was MRSA outbreak took place. Based upon those considerations, Plaintiff's bald assertion of a MRSA outbreak lacks persuasion.

**Recreation**

Stafford further alleges that he was denied adequate recreation privileges and the lights were kept on 24 hours a day for a period of twenty-one (21) days (while he was in the classification block). See Doc. 1, p. 3. His Complaint references that period as consisting of the weeks of October 26, 2008-November 2, 2008; November 23-30, 2008 and January 23-30, 2009.

Warden DeRose admits that Plaintiff did not receive recreation privileges during the eleven (11) day aggregate period that he was housed in the prison's Classification Block. See Doc. 114-2, ¶ 53. Specifically, from October 26-

15

30, 2008, November 23, 2008 and from January 23-29, 2009. However, DeRose additionally avers that during the time frame described by Plaintiff's pending action, the prisoner was afforded recreation on October 31, 2008; November 1, 2, 24, 25, 26, 27, 28, 29, and 30.

The denial of recreation for thirteen days does not amount to cruel and unusual punishment. Knight v. Armontrout, 878 F.2d 1093, 1096 (8th Cir. 1989). The halting of recreation during emergency lock downs "not objectively serious enough to warrant constitutional protection." Bacon v. Minner, 2007 WL 1157138 *2 (3d Cir. April 19, 2007). Based upon an application of the Knight and Bacon reasoning, the denial of recreational privileges whether it was for 11 or 21 days during the course a three month period does not rise to the level of a viable constitutional violation.[12]

**Conclusion**

For the reasons set forth above the totality of the circumstances of the pre-trial detainee Plaintiff's

---

[12] It has been recognized that "continuous exposure to low wattage night time security lighting may be permissible based on legitimate security concerns." Sims v. Piazza, 2009 WL 3147800 *23 (M.D. Pa. Sept. 28, 2009)(Kosik, J.); King v. Frank, 371 F. Supp.2d 977, 984-85 (W.D. Wisc. 2005). Similarly, in Brown v. Martinez, 2007 WL 2225842 * 8 (M.D. Pa. July 31, 2007) it was concluded that the presence of a 15 watt security night light in a prisoner's cell was necessary for night time institutional security and thus did not give rise to a constitutional violation.
Accordingly Plaintiff's vague assertion that lights were kept on 24 hours a day during his temporary periods of confinement in the Classification Unit is insufficient to set forth a viable claim.

16

incarceration during the relevant time period did not include such serious deprivations of basic human needs as to set forth a viable claim of being subjected to unconstitutional conditions of confinement. The motion for partial summary judgment will be granted.

The Court will schedule a status conference regarding Plaintiff's surviving claims that: (1) Defendants Lucas and Tuttle subjected Plaintiff to an excessive use of force; (2) Defendant Wright issued Stafford a retaliatory baseless misconduct charge and (3) denial of access to the courts.

/s/ Richard P. Conaboy
RICHARD P. CONABOY
United States District Judge

DATED: MARCH 6th, 2013

IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

DEON C. STAFFORD, SR.,

    Plaintiff,

v.

DOMINICK DEROSE, et al.,

    Defendants.

CIVIL NO. 3:CV-09-346

(Judge Conaboy)

**ORDER**

AND NOW, THIS 8TH DAY OF MARCH, 2013, in accordance with the accompanying Memorandum, **IT IS HEREBY ORDERED THAT:**

1. Remaining Defendants' motion for partial summary judgment (Doc. 112) is **GRANTED**.

2. Summary judgment is granted with respect to Plaintiff's claims regarding the conditions of his confinement.

3. The Plaintiff's claims that: (1) Defendants Lucas and Tuttle subjected Stafford to an excessive use of force; (2); (3) Defendant Wright issued Stafford a retaliatory baseless misconduct charge and (4) denial of access to the courts **WILL PROCEED**.

18

4. A status conference regarding Plaintiff's surviving claims will be scheduled.

RICHARD P. CONABOY
United States District Judge