IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEON C. STAFFORD, SR., | : | Case No. 3:09-CV-00346 |
| Plaintiff, | : | (Judge Brann) |
| v. | : | |
| DOMINICK DEROSE, et al., | : | |
| Defendants. | : | |

**MEMORANDUM**
April 1, 2015

## I. BACKGROUND

Deon Stafford Sr., ("Plaintiff") an inmate presently confined at the State Correctional Institution Dallas, Pennsylvania, initiated this pro se civil action on February 24, 2009, naming various correctional officers and the superintendent of Dauphin County Prison, Harrisburg, Pennsylvania as Defendants. ECF No. 1. Plaintiff's complaint was brought under 42 USC §1983 for the alleged violation of his civil rights.

The claims raised by Plaintiff, as well as the Defendants sued by Plaintiff, have been winnowed down over the ensuing years to three defendants and four claims. ECF No. 98, 99, 126. Plaintiff's remaining claims survive against Corrections Officers Wright, Tuttle and Lucas. ECF No. 99. Plaintiff alleges that

1

Defendant Wright issued a baseless misconduct against Plaintiff in retaliation for his prior lawsuit against corrections officers and grievances filed with respect to Dauphin County Prison.

Plaintiff also alleges that on January 6, 2009, corrections officers Tuttle and Lucas subjected him to excessive force. ECF No. 1 at 2. Plaintiff avers that after serving a misconduct citation on him, the two correction officers escorted him handcuffed into a cell. ECF No. 1 at 2. Plaintiff avers that they then pushed his face into the cell wall with such force it cracked his tooth. ECF No. 1 at 2.

During the course of the proceedings, Defendants filed a motion for summary judgment. ECF No.70, 74. Plaintiff opposed the motion on January 25, 2011 and filed several exhibits in response. ECF No. 80. Among the exhibits was a hand written statement signed by Steve "Stevens", another individual being held at Dauphin County Prison. ECF No. 83-12 at 4. Plaintiff claimed that "Stevens slid a statement under [the] cell by him saying don't let them get away with this." ECF No. 82 Exhibit 1. The statement indicated that "Stevens" witnessed two corrections officers assault Plaintiff. The statement reads:

> Around 5:50, two guards drug my friend Deon to our block 8-6 aggressively. They put him in the last cell. As I walked over, I herd Deon yelling, and a large c/o blocked the door, but thru the opening of his legs, I saw Deon being held in the air by two c/o's. Then they ran forward, and I herd a loud hard thud against the wall. Then they left, and Deon was in the cell on the ground his mouth was bleeding, and he was still hand-cuffed and in a whole lot of pain and I pushed the button for a nurse and no one came. Around 9:55 both c/os came back

and removed Deons' restraints. The officer's name tag read c/o Lucas:
<u>Steve Stevens</u>

ECF No. 83-12 at 4.  At the time, there was no Steve *Stevens* being held at Dauphin County Prison.  There was, however, a Steve *Stephens* in custody during the time of the alleged assault.

On October 7, 2014, Steve Stephens was deposed and he testified that he did not write the statement in question.  ECF No.188-2 at 2-3.  In fact, he denied ever seeing the statement until Plaintiff's attorney mailed him a copy in September 2014.  ECF No.188-2 at 2-3.  Significantly, he confirmed that he spells his last name with a "PH" and not with a "V", as the signed statement indicates.  ECF No.188-2, 3.  When questioned about the veracity of the statement, Stephens indicated that the contents of the letter were mostly true except he could not identify any officers involved in the alleged assault.  ECF No.188-2 at 2-3.

After establishing that Stephens was not the actual author of the statement, Stephens was asked to describe what happened to Plaintiff on the day of the alleged assault.  ECF No.188-2 at 3-5.  According to Stephens, two correction officers brought Plaintiff into "Q block" in handcuffs.  ECF No.188-2 at 3-4. Stephens stated that he stayed seated on his bunk but could view the incident through a window.  ECF No.188-2 at 3-5.  He stated that Plaintiff was brought in already bleeding from the mouth and may have had some marks on his face.  ECF No.188-2 at 4.  He claimed that the guards "did some damage to [Plaintiff] inside"

3

and that "they banged him up pretty bad." ECF No.188-2, 3-4. When asked to describe what he saw the guards did to Plaintiff, Stephens said that "I'd see him grab him, pick him up, throw him down." ECF No.188-2, 3-4. Stephens also thought that the correction officers were choking the Plaintiff because he could hear the noise, grunting and moaning. ECF No.188-2, 3-4. When pressed to describe the guards who were involved in the incident, Stephens could not describe any of the guards, except that one was tall and heavyset and one might have had a hat on. ECF No.188-2 at 4.

At a hearing before this Court conducted on October 9, 2014, Plaintiff was asked whether he wrote the statement signed by "Steve Stevens", to which his answer was "yes". ECF No. 189 at 82. Upon further examination, he also admitted that he lied about how he obtained the statement and that he signed it himself. ECF No. 189 at 83. Plaintiff explained to the Court that because Stephens was not permitted to have pens or papers at the time, Stephens gave him permission to write the statement and to sign the statement as Stephens. ECF No. 189 at 83.

Shortly after Steve Stephens' deposition, Defendants moved for sanctions against Plaintiff, asking the Court to dismiss the case, or, in the alternative, exclude Steve Stephens as a witness.

In accordance with the following reasoning, the motion for sanctions is granted and the complaint is dismissed with prejudice.

## II. DISCUSSION

Defendants seek dismissal of the lawsuit on the basis that Plaintiff committed a fraud upon the Court. The Court's ability to dismiss an entire action due to fraud on the court may arise under various procedural rules, or under the inherent power of the court. *See e.g., Chambers v. NASCO, Inc.,* 501 U.S. 32, 42-46, 111 S. Ct. 2123, 2132-33, 115 L. Ed. 2d 27 (1991) (discussing and contrasting several sources of the courts' authority and obligations to control various aspects of litigation and to fashion appropriate sanctions for conduct which abuses the judicial process.) *See also, Derzack v. Cnty of Allegheny, PA.* 173 F.R.D. 400, 412-13 (W.D. Pa 1996) *aff'd* 118 F.3d 1571 (3d Cir. 1997) (listing cases wherein courts used their inherent authority to deter misconduct when it constitutes fraud on the court by dismissing the action.)

Accordingly, it is clearly settled that a district court "may dismiss a suit outright in response to litigation abuses." *Republic of the Philippines v. Westinghouse Elect. Corp.,* 43 F.3d 65, 73 n. 10 (3d Cir. 1995) *(citing Eash v. Riggins Trucking, Inc.,* 757 F.2d 557, 566 (3d. Cir. 1985). Regardless of the source of authority invoked, the United States Court of Appeals for the Third

Circuit has held that district judges should determine the propriety of punitive dismissal by referencing the factors outlined in *Poulis v. State Farm Fire and Casualty Co.,* 747 F.2d 863 (3d Cir. 1984). *See also, Adams v. Tr. of NJ Brewery Emp. Pension Trust Fund,* 29 F.3d 863, 870 (3d Cir. 1994) (dismissal for failure to prosecute under Fed.R.Civ.P. 41(b) analyzed with reference to *Poulis* factors); *Hoxworth v. Blinder, Robinson & Co.,* 980 F.2d 912, 918–19 (3d Cir. 1992) ("we apply 'some or all of the six-part test enunciated in *Poulis* ...' in reviewing sanction orders that deprive a party of the right to proceed with or defend against a claim"; court has power to dismiss claim under the authority of Fed.R.Civ.P. 37 or 55 after consideration of *Poulis* test).

In *Poulis*, a six factor balancing test was set forth to guide a court's analysis as to whether dismissal of a claim was an appropriate sanction. The factors are:

> (1) the extent of the party's personal responsibility; (2) the prejudice of the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness, (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

*Poulis,* 747 F.2d at 868.

In balancing the *Poulis* factors, the Third Circuit has explained that "no single *Poulis* factor is dispositive," and "not all of the *Poulis* factors need be satisfied in order to dismiss a complaint." *Ware v. Rodale Press, Inc.,* 322 F.3d

218, 222 (3d Cir. 2003); *Mindek v. Rigatti,* 964 F.2d 1369, 1373 (3d Cir. 1992). There is no "magic formula" to determine how the *Poulis* factors should be balanced, and the determination is within the district court's discretion. *Briscoe v. Klaus,* 538 F.3d 252, 263 (3d Cir.2008).

In applying the *Poulis* factors, the Court must be mindful that dismissal is an extreme sanction because it deprives a litigant of his or her day in court. *Poulis,* 747 F.2d at 867–68. Dismissal may be appropriate "so long as the ... court carefully considers and weighs the several factors and reasonably exercises discretion in finding the scales tip toward dismissal." *Derzack,* 173 F.R.D. at 414 (*citing Mindek,* 964 F.2d at 1373)

### III. ANALYSIS

After careful evaluation and balancing of all of the *Poulis* factors, it is clear that the "extreme sanction of dismissal" is warranted here. *Poulis,* 747 F.2d at 870.

**a. Extent of the party's personal responsibility**

There is no question that Plaintiff authored and signed the purported statement from Stephens. Plaintiff admits in Court that he, and not Stephens, wrote the statement attached to his brief. He concocted a back story as to how he came by the statement and then supplied the fabricated statement to support his opposition to summary judgment. Furthermore, Stephens testified that he did not

7

write the statement and stated that he had not seen the statement until a copy was mailed to him by Plaintiff's attorney. Plaintiff is solely responsible for submitting the forged document to the Court. This factor favors dismissal.

### b. Prejudice to the Adversary and Impact on Integrity of the Judicial System

There is no evidence that Defendants were prejudiced because of Plaintiff's failure to meet scheduling orders and to respond to discovery. However, when the underlying misconduct upon which the Court is considering dismissal is fraud, "a modified *Poulis* analysis provides the most suitable framework." *Derzack* , 173 F.R.D at 414. The Court must therefore consider not only the prejudice to the litigants, but also the impact of the fraudulent conduct on the judicial system and the threat it poses to the integrity of the Court. *Id. See also, In re Diet Drugs*, 381 F. Supp 2d. 421, 425 (E.D. Pa. 2005) (holding that the "prejudice" component outlined by *Poulis* encompasses "the impact of the fraud on the judicial system and the threat to the integrity of the courts.") As noted by the United States Supreme Court:

> ... tampering with the administration of justice in the manner indisputably shown here involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society.

*Hazel–Atlas Glass Co. v. Hartford–Empire Co.,* 322 U.S. 238, 246, 64 S.Ct. 997, 88 L.Ed. 1250 (1944), *overruled on other grounds, Standard Oil v. United States,* 429 U.S. 18 (1976).

In dismissing this case, the Court ensures that litigants who avail themselves of the Court's jurisdiction, conduct themselves according to the rules of the court and within the orderly administration of justice. More importantly, dismissal is warranted here because it is "sufficient to deter repetition of the misconduct or to deter similar conduct by third parties." *Jimenez v. Madison Area Technical Coll.,* 321 F.3d 652, 657 (7th Cir.2003). Plaintiff's forgery was intended to mislead the Court and as a result, this *Poulis* factor likewise favors dismissal.

### c. A History of Deleteriousness and Abuse

It is not readily evident from the record that the Plaintiff has engaged in a pattern and practice of bad faith in addition to submitting the falsified material. However, it is well-settled that no single *Poulis* factor is dispositive and not all of the *Poulis* factors need be satisfied in order to dismiss a complaint. *Mindek,* 964 F.2d at 1373; *Briscoe v. Klaus,* 538 F.3d 252, 263.

### d. Willfulness or Bad Faith

Under this *Poulis* factor, the Court must consider whether the conduct was "the type of willful or contumacious behavior which was characterized as flagrant bad faith." *Adams*, 29 F.3d at 875. Generally, "[w]illfulness involves intentional or self-serving behavior." *Id.* Bad faith is found when the conduct goes beyond mere negligence. *Emerson v. Thiel Coll.,* 296 F.3d 184, 191 (3d Cir. 2002).

It is hard to imagine a more willful act than perpetrating a fraud on the court by submitting knowingly falsified documents. Plaintiff admitted readily at the time of the hearing that he wrote the note and forged Stephen's signature. Even if Stephens authorized Plaintiff to write the note, Plaintiff embellished and manufactured some of the details to ensure that the note had maximum effect. While Plaintiff's note named Defendant Lucas as one of the corrections officers who allegedly assaulted him, Stephens adamantly denied seeing Defendant Lucas and gave only vague descriptions of the corrections officers involved in the alleged assault. The note also claims that Stephens pushed a button for a medical assistance, but Stephens did not relate any of this to the attorneys during his deposition. The "Stevens' note was willfully created by the Plaintiff; consequently, this factor also favors dismissal.

### e. Alternative Sanctions

Ordinarily, the Court must consider the availability of a sanction alternative to dismissal. *Poulis,* 747 F.2d at 869. However, where a plaintiff is proceeding *in forma pauperis*, as is the case here, it has been found that no alternative sanctions exist because monetary sanctions, including attorney's fees, "would not be an effective alternative." *Emerson,* 296 F.3d at 191; *Thomas v. Pennsylvania,* No. 4:CV-09-2320, 2013 WL 4813165, at *5 (M.D. Pa. Sept. 9, 2013) (Nealon, J.) In light of his continued incarceration it seems doubtful that the Plaintiff would be able to pay monetary sanctions.

Moreover, and perhaps more significantly, in a case of a fraud upon the court such as this, any sanction short of dismissal may be "inherently inadequate to remedy the harm to the public interest in preserving the integrity of the courts, and in deterring future misconduct on the part of other litigants." *Derzack,* 173 F.R.D. at 417. In the circumstances presented here, this *Poulis* factor weighs in favor of dismissal.

### f. Meritoriousness of the Claims and Defenses

A claim or defense is considered meritorious when the allegations of the pleadings, if established at trial, would support recovery by the plaintiff or alternatively, would constitute a complete defense. *Poulis,* 747 F.2d at 869-70.

In the matter at hand, Stephens testified that he saw two correction officers grab the Plaintiff, pick him up and then throw him down. He also inferred from the noise, that Plaintiff was being choked by the guards. Finally Stephens claimed that he heard Plaintiff, grunt, moan, and say "get off me, why are you doing this" as the alleged assault occurred.

Stephen's testimony as outlined above and the fact that Plaintiff's remaining claims have survived summary judgment motion thus far, suggests that there may be some merit to Plaintiff's claims. Nonetheless, dismissal is appropriate because a fraud upon the court "goes to the very heart of our judicial system." *In re Diet Drugs,* 381 F. Supp. 2d 421, 426 ( E.D. Pa. 2005). Fraud on the Court is also a much more serious offense than a party's failure to meet court-imposed deadlines and other procedural requisite as was present in *Poulis. Id.* at 425. *See also Derzack,* 173 F.R.D at 412-13 (exhaustively listing cases where litigants attempted to perpetrate a fraud on the court by fabricating evidence and dismissal was found to be an appropriate sanction.) By foisting this fabricated statement on the Court, Plaintiff attempted to mislead and improperly influence the judicial system's ability to adjudicate the matter. This factor therefore weighs in favor of dismissal.

The final step in the *Poulis* analysis is to weigh and consider all the above factors to determine if dismissal is warranted. In sum, the first, second, fourth, fifth and sixth *Poulis* factors lean significantly toward dismissal while the third

factor does not lean either way and is neutral. Accordingly, with five out of the six *Poulis* factors weighing strongly in favor of dismissal, the Court concludes that Plaintiff's complaint should be dismissed.

## IV. CONCLUSION

In sum, a balancing of the *Poulis* factors weigh in favor of dismissing this action with prejudice. For the foregoing reasons, Defendant's motion for sanctions is granted and the Complaint is dismissed with prejudice.

                                              BY THE COURT:

                                              /s Matthew W. Brann
                                              Matthew W. Brann
                                              United States District Judge